582 A.2d 694

**SCURFIELD COAL, INC., Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1990.

Decided Aug. 16, 1990.

Designated as opinion to be reported Nov. 13, 1990.

Scott A. Scurfield, Ogle, Policicchio & Frantz, Somerset, for appellant.

Edward H. Jones, Pittsburgh, for appellee, Com. of Pennsylvania.

Jeffrey L. Berkey, Fike, Cascio & Boose, Somerset, for appellee/intervenor, Borough of Windber.

Before PALLADINO and McGINLEY, (P.), JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Scurfield Coal, Inc. (Scurfield) appeals from an order of the Court of Common Pleas of Somerset County, that found Scurfield guilty of four separate summary offenses and imposed fines. The trial on the charges, de novo, was held following an appeal from a summary hearing held before a district justice.

Scurfield was issued four separate citations involving the operations at its facility located in the Borough of Windber (Borough). Three of these offenses involved a violation of the ordinance of the Borough and the other was filed by the Department of Environmental Resources (DER) against Scurfield for violating Section 123.2 of DER's regulations and Section 8 of the Air Pollution Control Act, Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. § 4008. The three citations issued by the Borough will be discussed separately from that issued by the DER.

In the citations issued by the Borough, Scurfield is alleged to have interfered with the peaceful use of property in the Borough by washing, tracking or otherwise depositing mud upon and onto the pavement of a Borough street, having failed to remove the same by 5:00 p.m. of the same day it was deposited, in violation of the Borough nuisance ordinance. This ordinance reads in pertinent part:

*Section 1: Definitions.*

1. The word 'nuisance', as used in this Ordinance, shall mean and include, in addition to any other definition as contained in this Ordinance, any use of property within the borough, or any condition upon property in the borough that, other than infrequently, causes or results in:

(a) annoyance or discomfort to persons beyond the boundaries of that property;

(b) interference with the health and/or safety of persons beyond the boundaries of that property or of persons who might reasonably be expected to enter upon or be in that property; and/or

(c) disturbance to or interference with the peaceful use of the property of others within the borough, in every case taking into consideration the location of the use or condition and the nature and condition of the surrounding neighborhood. Specifically, the word 'nuisance' shall include but shall not be limited to the following:

. . . .

(6) Washing, tracking or otherwise depositing dirt, mud, soil, stone or debris upon or onto the pavement of any street, without removing that material before 5:00 p.m. of the day on which it was deposited on the street;

. . . .

*Section 2: Unlawful to Create or Maintain a Nuisance.* It shall be unlawful for any person to create, continue, cause, maintain or permit to exist any nuisance at any place within the borough.

Three police officers testified that they observed dirt and mud on the road leading into and out of the Scurfield facility after 5:00 p.m. on each of the dates that citations were issued. Although the officers did not witness any vehicles entering or leaving the business establishment, they also testified that the dirt, mud and other debris on the road was extremely dark, of a black color, and each officer characterized the debris as coal dirt. The trial court concluded that the circumstantial evidence was sufficient to establish that the dirt, mud and debris on the road was tracked and deposited there by either Scurfield employees or business invitees of Scurfield, and found Scurfield guilty of violating the ordinance.

■ Scurfield argues that there was insufficient evidence to prove beyond a reasonable doubt that it deposited the

debris in question onto the street. The Commonwealth may prove its case by circumstantial evidence, but the pieces of evidence must fit together so tightly as to establish guilt beyond a reasonable doubt. *Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265 (1976). We agree with the trial court that the evidence presented was sufficient to support a guilty verdict.

■ Scurfield argues also that the trial court failed to take into consideration the location of the use or condition that allegedly constituted a nuisance and the nature and condition of the surrounding neighborhood in determining that the acts constituted a nuisance. Scurfield claims that since the neighborhood is not purely residential the occasional depositing of mud or debris is to be expected and that the trial court did not properly apply the ordinance to Scurfield's activities. However, the trial court did consider the nature of the violation, the condition of the road and the nature and condition of the surrounding neighborhood. When making his ruling from the bench, the trial judge stated:

Number two, appeals taken to Numbers 37, 38 and 141 are all denied; and the fines and costs assessed are again imposed.

And I do so for the following reasons:

Contrary to your argument, I'm old enough to know these areas and the mere fact that it is a mining area does not preclude the proper use of people in the area of their own properties. And because it is in a coal mining area, it's no reason why the streets can't be clean. And if an individual—in this case, Scurfield Coal Company— wishes to utilize that area for their purposes, that is one of the penalties they pay for doing business. They have to abide by these ordinances and see that it's taken care of.

Now, you can't just have an employee say: Well, I swept up to a certain point and then Dox Planks should have swept the rest of it. Maybe so, but that again is an

agreement or arrangement that you people should do with Dox Planks or whoever uses that road.

So for that reason, all the appeals are dismissed. (Reproduced Record, p. 54.)[1]

Thus, it is clear from this ruling that the trial court did take into consideration the nature and condition of the surrounding neighborhood.

Appellant further asserts that the nuisance ordinance is unconstitutionally vague and overbroad. "Constitutionally vague statutes proscribe activity in terms so ambiguous that reasonable persons may differ as to what is actually prohibited." *Commonwealth v. Stenhach*, 356 Pa.Superior Ct. 5, 24, 514 A.2d 114, 124 (1986).

■ Both overbroad and vague statutes deny due process in two ways: they do not give fair notice to people of ordinary intelligence that their contemplated activity may be unlawful and they do not set reasonably clear guidelines for law officials and courts, thus inviting arbitrary and discriminatory enforcement. *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

■ The language provided in the ordinance is clear as to what constitutes a nuisance and is not so ambiguous that it would cause improper applications of the ordinance. On the issue of fair notice, there was testimony by the superintendent of Scurfield that he was aware of Scurfield's duty under the ordinance to clean and maintain the roadway in question, and that failure to do so was unlawful. Thus, the Windber Borough Ordinance was specific enough to provide clear enforcement guidelines to the police officers, clearly defined what constituted a nuisance and gave fair notice to Scurfield that its activity was unlawful. The trial court found that Scurfield was guilty of violating the ordinance and we affirm.

■ The fourth citation was filed by the DER against Scurfield for violating its regulation at 25 Pa.Code § 123.2

1. Dox Planks referred to in the above quote is a cement processing plant in the vicinity.

and Section 8 of the Air Pollution Control Act. At the de novo hearing, Scurfield moved to dismiss the citation on the basis that the violation charged was de minimis. This motion was denied and the trial court found that a violation had occurred.

The criminal citation was issued by a DER air quality specialist, after receiving over thirty complaints from residents living near the coal facility that they had observed numerous clouds of black dust coming from Scurfield's property towards their houses. The DER specialist testified that, on March 25, 1988, he saw a coal truck exit the Scurfield facility and that black dust blew from Scurfield's property towards the houses of the residents. The citation charged Scurfield with emitting fugitive particulate matter, namely dust, from its facility into the outdoor atmosphere in such a manner that the emissions were visible as they passed outside Scurfield's property.

Section 123.2 of the DER's regulations provides:

> No person may permit fugitive particulate matter to be emitted into the outdoor atmosphere from a source specified in § 123.1(a)(1)—(9) (relating to prohibition of certain fugitive emissions) if the emissions are visible at the point the emissions pass outside the person's property.

Section 123.1(a)(3), under the heading "Fugitive Emissions" relating to the "use of roads and streets" is the specific source under which Scurfield's activity falls. Scurfield argues that the testimony presented is insufficient to support a conviction under this section.

In *Eureka Stone Quarry, Inc. v. Commonwealth,* 118 Pa.Commonwealth Ct. 300, 544 A.2d 1129 (1988), a DER air quality specialist testified that he saw dust blowing from the quarry and passing outside of the quarry property. The court held that this testimony was sufficient to support the conviction of the defendant quarry operator for violating Section 123.2 of DER's regulations and Section 8 of the Air Pollution Control Act.

*Eureka* is indistinguishable from the present case in which the DER specialist also saw a cloud of dust blowing

from Scurfield's property onto the property of nearby residents. There is no mention of the amount of dust observed in *Eureka,* nor is there any specific amount of fugitive emission necessary to uphold a conviction under the sections involved. Under Section 123.2 it was not required that special equipment be used to measure the amount of dust escaping from the Scurfield facility. It was required only that the dust be visible at the point it left Scurfield's property; the observation of this occurrence is clear in the record.

Appellant argues also that the issuance of a citation on the basis of a single cloud of dust, in spite of the fact that no other violations had been cited in the DER's seventy-five to eighty previous visits to the site, indicates that the violation was clearly de minimis and that the charge should be dismissed.

■ A prosecution will be dismissed as de minimis under Section 312 of the Pennsylvania Crimes Code if:

[H]aving regard to the nature of the conduct charged and the nature of the attendant circumstances the court finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S. § 312.

The purpose of this section is to remove petty infractions from the category of criminal conduct. 18 Pa.C.S. § 312, Official Comment–1972. It has also been held that the Pennsylvania legislature enacted Section 312 "to apply to situations in which there was no harm done to either [a]

victim or society." *Pennsylvania v. Moses*, 350 Pa.Superior Ct. 231, 504 A.2d 330 (1986). DER contends that Scurfield has failed to meet the requisite elements under this section to show that the violation charged was de minimis for the following reasons which appellee has fully discussed in its brief to this Court:

■ First, DER asserts that Scurfield's conduct was not within a customary license or tolerance. Scurfield's conduct was expressly negatived by the surrounding residents of the facility. There were numerous complaints filed by the residents to the DER which caused the DER to closely monitor Scurfield's activities. These complaints show that there was not a tolerance for Scurfield's activities, and any tolerance would have been in direct conflict with the purpose of DER's air quality regulations to prevent or control air pollution. Thus, it cannot be argued that Scurfield's conduct was within a customary license or tolerance.

Secondly, Scurfield did actually cause or threaten the harm sought to be prevented by 25 Pa.Code § 123.2 and the extent was far from being too trivial not to uphold the conviction. The harm sought to be prevented by § 123.2 is air pollution which "may be inimical to the public health, safety, or welfare or which is, or may be injurious to human, plant or animal life, or to property, or which reasonably interferes with the comfortable enjoyment of life or property." Air Pollution Control Act, Section 3(5).

It is quite clear from the testimony presented that the dust emissions from Scurfield interfered with the residents' use and enjoyment of their property and also with the health of some of the residents. One resident, Mrs. Virjenock, produced as evidence "dust collection pads", which were pieces of paper with petroleum oil that she placed out on her porch (which is covered by a roof) to collect the excessive coal dust blowing onto her property. A box full of these papers was admitted as evidence of the black dust. She testified:

WITNESS (MRS. VIRJENOCK): And like I said, it's a lot of work to do; but to me, this is the only evidence I could

come with. Our houses, people worked so hard to side their houses and it's a greasy dirt. You cannot keep it clean. They track this in. You can't keep your rugs clean or anything. I cannot keep up with it with my arthritis to clean like this.

We live like a bunch of pigs, to tell you the truth; and we keep calling the police and everything, but—I don't know what else we could do. These people suffer. We lost a neighbor to Black Lung just about a month and a half ago. And some of them are too sick and too old to go complain.

(Notes of Testimony, 19–20.)

She further testified:

I have pictures here that you can't ever sit on your porch, Your Honor. You can't ever open a door. You can never open a window. It's a shame that people live there all their lives—

(N.T., 25.)

This testimony was admitted by the court as being descriptive of the existing conditions. These dirty conditions are clearly the harm sought to be *prevented* by the law, and cannot be considered to be trivial. Thus, Scurfield has not met this de minimis criterion either.

To show the existence of a de minimis violation, the third circumstance which will cause a dismissal of the prosecution is if the specific conduct charged presents such extenuations that it cannot reasonably be regarded as envisaged by the Pennsylvania General Assembly in adopting the Air Pollution Act. Scurfield argues in its brief that issuing a citation on a single cloud of dust is absurd. It submits that because the DER air quality specialist had not observed or cited any violations on his previous visits, that the violation is de minimis. However, according to the Air Pollution Control Act, citations on separate days are to be considered separate offenses. DER cites an appropriate parallel in its brief. It argues that just as a court would be correct in not dismissing as de minimis a traffic speeding

violation simply because the violator had managed to elude
detection when speeding on numerous previous occasions,
so too was the judge at trial in the present case correct in
finding that DER's inability to be present at the precise
moment fugitive dust was blowing off Scurfield's property
on previous occasions should not serve as a basis for
dismissing as de minimis the violation of March 25, 1988.
The DER specialist observed the emission of dust from
Scurfield's property in violation of Section 123.2 on the date
the citation was issued.

This specialist was not at the Scurfield site merely be-
cause of a whim but in response to the continuing com-
plaints of residents. Testimony was offered by a resident,
Mrs. Evanchock, that she kept daily records of the dust
emissions because of the constant blowing of dust onto
their properties:

Q. Are you able to tell the Court about the conditions on
that particular day?

A. I keep a log daily for the last almost three years of
what I see or what I notice, you know, on the road and
what is going on down across the truck traffic and
everything. And I have jotted down here that it was a
very windy day and the road was dry and dusty.

THE COURT: We're talking about March the 25th?

WITNESS (MRS. EVANCHOCK): Right.

THE COURT: Okay.

WITNESS (MRS. EVANCHOCK): And I have jotted
down that the dirt blew everywhere.

Mr. Pezzi had called me too because I had called [sic]
previous day to complain and all week it led up to this day
that DER came to cite them.

(N.T., 36.)

Thus, it cannot be argued that the dust emissions were
infrequent in number, but an ongoing concern for the
residents which caused the DER specialist to be present on
the day the citation was issued. The residents of Windber
Borough are entitled to clean air, which is the intent of the
legislature in enacting the Air Pollution Control Act. Scur-

field fails to show that its conduct was not the type proscribed by the General Assembly, therefore, it has not shown the third circumstance of a de minimis violation.

For these reasons, the order of the court finding Scurfield guilty of the violations must be affirmed.

## ORDER

NOW, August 16, 1990, the judgments of sentence imposed by the Court of Common Pleas of Somerset County on November 3, 1989, at Nos. 37, 38 and 320 Criminal 1988 and No. 141 Criminal 1989, are affirmed.