COMMONWEALTH of Pennsylvania,
OFFICE OF ATTORNEY GENERAL
BY Thomas W. CORBETT, Jr., Attorney General, Plaintiff

v.

RICHMOND TOWNSHIP, and
Richmond Township Board of
Supervisors, Defendants.

Commonwealth Court of Pennsylvania.

Argued April 2, 2009.
Decided May 22, 2009.

Susan L. Bucknum, Sr. Deputy Attorney General, Harrisburg, for plaintiff.

Anthony R. Sherr, Blue Bell, for defendants.

BEFORE: COHN JUBELIRER, Judge and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Before this court is the motion for judgment on the pleadings (Motion) filed by Richmond Township and Richmond Township Board of Supervisors (together, Township) in response to the Amended Petition for Review (Petition) filed by the Commonwealth of Pennsylvania, Office of Attorney General By Thomas W. Corbett, Jr., Attorney General (Attorney General) in this court's original jurisdiction.

On August 14, 2000, the Township adopted Ordinance Number 81–2000 (Ordinance), which purports to regulate intensive agricultural activities (IAAs) differently from normal agricultural operations (NAOs) by requiring farmers who want to engage in IAAs to obtain a special exception from the Township Zoning Hearing Board (ZHB). (Petition, ¶¶ 6–10.) The Ordinance differentiates between IAAs and NAOs by setting forth distinct activities in each category. Specifically, section 201.4 of the Ordinance defines "Agriculture" as "[t]he cultivation of the soil and the raising and harvesting of the products of the soil, including but not limited to nursery, horticulture, forestry and animal husbandry"; "Agriculture (Intensive)" is defined as "[s]pecialized agricultural activities including, but not limited to, mushroom production, poultry production, and dry lot livestock production, which due to the intensity of production, necessitate development of specialized sanitary facilities and control." (Exh. A at 3.)

Section 804.7 of the Ordinance establishes the conditions necessary to qualify for a special exception to engage in IAAs as follows:

> Intensive agricultural activities include, but are not limited to, mushroom farms, *poultry* and egg *production,* and dry lot farms, *wherein the character of the activity involves a more intense use of the*

*land than found in normal farming operations.*

 a. Intensive agricultural activities shall not be located within one thousand five hundred feet (1,500) of another zoning district or existing residence located within the Agriculture or any other zoning district.

 . . . .

 c. Commercial composting is prohibited. Any on-site composting shall be limited for use on the premises on which such composting is made and produced.

 d. Solid and liquid wastes shall be disposed of daily in a manner to avoid creating insect or rodent problems, or a *public nuisance*. No emission of noxious, unpleasant gases shall be permitted in such quantities as to be offensive outside the lot lines of the tract occupied by an intensive agricultural user.

 . . . .

(Exh. A at 114) (emphasis added).

 In 2005, Kervin and Mary Jane Weaver (the Weavers), who own and operate a farm located in a Township Agricultural Security Area (ASA), entered into a contract to raise broiler chicks for sale. The Weavers' proposed chicken operation is an NAO as defined by section 2 of the act commonly known as the Right to Farm Law (RFL);[1] however, under the Ordinance, the Weavers' proposed operation would be characterized as an IAA. The Weavers filed a land use appeal challenging the Ordinance and asserting that section 804.7 of the Ordinance violates or is preempted by various state laws.[2] Subsequently, the Weavers received a stay in the proceedings before the ZHB so that the Attorney General could review the Ordinance and determine whether to bring an action against the Township. Such action would be pursuant to chapter three of the Agriculture Code (ACRE),[3] which prohibits local governments from adopting or enforcing unauthorized local ordinances, i.e., ordinances that prohibit or limit NAOs without the authority of state law. 3 Pa. C.S. §§ 312 and 313. (Petition, ¶¶ 12, 16, 22(a)-(c); Exhs. A, B.)

 Following his review, the Attorney General filed the six-count Petition, asserting that certain sections of the Ordinance violate ACRE and other state laws and seeking declaratory and injunctive re-

---

1. Act of June 10, 1982 P.L. 454, *as amended,* 3 P.S. § 952. This section defines a "normal agricultural operation" as:

 *[t]he activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry,* livestock and their products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities and is:
 (1) not less than ten contiguous acres in area; or
 (2) less than ten contiguous acres in area but has an anticipated yearly gross income of at least $10,000.
 . . . .

 3 P.S. § 952. (Emphasis added.)

2. The Weavers were not aggrieved by an adjudication or enforcement proceeding prior to filing their "appeal."

3. 3 Pa.C.S. §§ 311–318. ACRE, which took effect July 6, 2005, applies to local regulation of NAOs so that such operations are consistent with state policies and statutes. Section 314(a) of ACRE provides that an owner or operator of a NAO may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance under ACRE. 3 Pa.C.S. § 314(a). Section 315 of ACRE authorizes the Attorney General to bring an action against a local government unit in Commonwealth Court to invalidate an unauthorized local ordinance or enjoin the enforcement of an unauthorized local ordinance. 3 Pa.C.S. § 315.

lief.[4] On September 19, 2008, the Township filed this Motion, maintaining that it is entitled to judgment on the pleadings because the Attorney General: (1) failed to allege a ripe case or controversy; (2) failed to demonstrate that the Ordinance is inconsistent with or preempted by any of the enumerated statutes; and (3) failed to state a claim as against the Township Board of Supervisors (Board).[5]

## I. Ripe Case or Controversy

■ The Township first argues that it is entitled to judgment on the pleadings because the Attorney General has failed to aver any facts that would support the conclusion that the Township has applied or enforced the Ordinance *against the Weavers* in a manner inconsistent with state law, and, therefore, there is no case or controversy ripe for judicial review.[6] However, in *Commonwealth v. Locust Township*, 600 Pa. 533, 968 A.2d 1263 (2009), our supreme court held that, pursuant to sections 314 and 315 of ACRE, the Attorney General has the authority under ACRE to bring an action challenging the validity of a local, pre-existing ordinance regardless of whether a municipality has actually enforced the ordinance.[7] Accordingly, the question of whether the relevant sections of the Ordinance violate ACRE and/or are preempted by state law is ripe for judicial review.

## II. Inconsistent with and/or Preempted by State Law

The Township next asserts that it is entitled to judgment on the pleadings because the Attorney General failed to demonstrate how the relevant sections of the Ordinance are inconsistent with or preempted by certain state laws.

---

4. By order dated February 20, 2007, this court sustained in part and overruled in part the Township's preliminary objections to the original petition for review filed by the Attorney General, and we granted the Attorney General leave to amend. *Commonwealth v. Richmond Township*, 917 A.2d 397 (Pa. Cmwlth.2007).

5. Pursuant to Pa. R.C.P. No. 1034(a), a party may file a motion for judgment on the pleadings after the relevant pleadings are closed, but within such time as not to unreasonably delay the trial. A motion for judgment on the pleadings may be granted only when there are no disputed facts, the moving party's right to succeed is certain and the case is so free from doubt that a trial would be a fruitless exercise. *Beardell v. Western Wayne School District*, 91 Pa.Cmwlth. 348, 496 A.2d 1373 (1985). When considering a motion for judgment on the pleadings, the court must consider the pleadings and relevant documents, including preliminary objections, and must accept as true all well-pleaded statements of fact, admissions and any documents properly attached to the pleadings presented by the non-moving party. *Id.*; Pa. R.C.P. No. 1017(a).

6. It is well-established that an actual case or controversy must exist at all stages of the judicial or administrative process. *Utility Workers Union of America, Local 69, AFL–CIO v. Public Utility Commission*, 859 A.2d 847 (Pa.Cmwlth.2004). Ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative polices and is described as a legal principle instructing courts to review government actions only when the government's position has crystallized to the point at which a court can identify a relatively discrete dispute. *Gardner v. Commonwealth, Department of Environmental Resources*, 658 A.2d 440 (Pa. Cmwlth.1995).

7. In *Locust Township*, the supreme court reversed this court's holding that, pursuant to section 313(b) of ACRE, which states "[T]his chapter [ACRE] shall apply to the enforcement of local ordinances existing on the effective date of this section...." 3 Pa.C.S. § 313(b) (emphasis added), the Attorney General does not have the authority to bring an action under ACRE challenging a pre-existing ordinance until the municipality enforces the ordinance.

### 1. Count I

■■ In Count I, the Attorney General asserts that the definitions of Agriculture and Agriculture (Intensive) in section 201.4 of the Ordinance and the conditions for a special exception to engage in IAAs set forth in section 804.7 of the Ordinance violate sections 312 and 313 of ACRE.[8] According to the Attorney General, a simple reading of sections 201.4 and 804.7 reveals that the Ordinance fails to provide any guidance as to how the Township determines when activities associated with an NAO intensify to the level that they transform into an IAA. The Attorney General maintains that, because a person cannot read the Ordinance and ascertain whether a particular agricultural activity would be considered "intensive," the Ordinance is unconstitutionally vague and ambiguous.[9] Moreover, the Attorney General further asserts that, because enforcement of the Ordinance depends solely upon the subjective determination of Township officials, it invites discriminatory enforcement.

In its Motion, the Township contends that it is entitled to judgment on the pleadings on Count I because sections 201.4 and 804.7 of the Ordinance: (1) are not arbitrary, vague or unreasonable; (2) do not invite impermissible discrimination; and (3) do not prohibit NAOs but, instead, allow for such operations by special exception. However, after reviewing the pleadings, relevant documents and the law, we conclude that sections 201.4 and 804.7 are not so clear and unambiguous that a trial would be a fruitless exercise. Accordingly, because the Township has failed to establish that its right to succeed on Count I is certain, the Township is not entitled to judgment on the pleadings on Count I.

### 2. Count II

■■■ In Count II, the Attorney General avers that sections 804.7.a, 804.7.c and 804.7.d of the Ordinance are inconsistent with and preempted by the Nutrient Management Act (NMA), 3 Pa.C.S. §§ 501–520, which occupies the whole field of regulating nutrient and odor management.[10] (Petition, ¶¶ 24–25.) The Attorney General alleges that: (1) section 804.7.a's 1,500–foot setback requirement is inconsistent with and preempted by the NMA's setback requirements; (2) section 804.7.c's prohibition on commercial composting and limitation on on-site composting is more strin-

---

**8.** Section 312 of ACRE defines an "unauthorized local ordinance" as an ordinance enacted by a local government unit which, *inter alia*, prohibits or limits a NAO unless the local government unit has expressed or implied authority under state law to adopt the ordinance and is not prohibited or preempted under state law from adopting the ordinance. 3 Pa.C.S. § 312. Section 313(a) of ACRE prohibits a local government unit from adopting or enforcing an unauthorized local ordinance. 3 Pa.C.S. § 313(a).

**9.** It is well-settled that a local government has no authority to adopt an ordinance that is arbitrary, vague or unreasonable or inviting of discriminatory enforcement. Richmond Township. A vague ordinance proscribes activity in terms so ambiguous that reasonable persons may differ as to what is actually prohibited. *Scurfield Coal, Inc. v. Common-*

*wealth,* 136 Pa.Cmwlth. 1, 582 A.2d 694 (1990).

**10.** The matter of preemption is a judicially created principle, based on the proposition that a municipality, as an agent of the state, cannot act contrary to the state. *Burkholder.* A municipality may be foreclosed from exercising police power it would otherwise have if the Commonwealth has sufficiently acted in a particular field. *Id.* As a general matter, the state is not presumed to preempt a field merely by legislating in it. *Id.* Rather, the General Assembly must clearly express its intent to preempt a field in which it legislated. *Id.* The test for preemption is well established; either the statute must state on its face that local legislation is forbidden or indicate an intention on the part of the legislature that it should not be supplemented by municipal bodies. *Id.*

gent than the NMA's regulations; and (3) section 804.7.d's requirement that solid and liquid wastes be disposed of on a daily basis conflicts with the NMA's regulations, which require disposal of solid and liquid wastes on a seasonal basis. (Petition, ¶¶ 26–31.)

■■■ The Township asserts that Count II should be dismissed in its entirety because it is legally insufficient. First, the Township contends that the Attorney General's challenge to section 804.7.a must fail because that section regulates "intensive agricultural activities" not "manure storage facilities." However, we agree with the Attorney General that the question of whether manure storage facilities (regulated by the NMA) are included in the Ordinance's definition of "intensive agricultural activities" (governed by section 804.7.a) is one of fact that cannot be resolved on a motion for judgment on the pleadings.[11] Accordingly, judgment on the pleadings on Count II's challenge to section 804.7.a of the Ordinance is not proper.

■■■ The Township next asserts that the Attorney General's challenges to 804.7.c and 804.7.d of the Ordinance fail because the Petition does not identify either the NMA regulations governing the use of composted materials or the regulations governing to the disposal of solid and liquid wastes which these Ordinance sections allegedly violate. Although characterized as a demurrer, we conclude that the Township essentially challenges the sufficiency of the Attorney General's pleadings, which the Township should have, but did not, raise in its preliminary

objections (POs). *See* Pa. R.C.P. No. 1028(a)(3) and 1028(b) (stating that a party can file POs to the specificity of the pleading and that, with a few exceptions not relevant here, all POs should be raised at one time). Moreover, to the extent the Township is challenging whether such regulations exist, this is a question of fact that is in dispute and, therefore, the Township has not established its right to judgment on the pleadings with respect to Count II's challenges to sections 804.7.c and 804.7.d.

### 3. Count III

■■■ In Count III, the Attorney General avers that section 804.7.c of the Ordinance (relating to composting) is inconsistent with and preempted by section 2352 of the Domestic Animal Law (Animal Law), 3 Pa.C.S. § 2352, which sets forth the permissible methods for the disposal of dead domestic animals and animal waste, and section 2389 of the Animal Law, 3 Pa.C.S. § 2389, which states that it preempts ordinances, resolutions or regulations of political subdivisions which pertain to the procedure for disposal of dead domestic animals and domestic animal waste. (Petition, ¶¶ 32–35.)

The Township argues that Count III should be dismissed because it fails to state a claim upon which relief can be granted because sections 2352 and 2389 of the Animal Law are inapplicable where, as here, the animals will be slaughtered for human food. Section 2351 of the Animal Law, 3 Pa.C.S. § 2351 (stating that the Animal Law does not apply to the disposal

---

11. The Attorney General avers that both the Weavers and the Burkholders have approved nutrient management plans (NMP) from the Berks County Conservation District, which control the storage and disposal of manure generated by their agricultural operations and regulate the amount and frequency of manure application to crops. (Petition, ¶¶ 22(d)–

22(g).) The Attorney General points out that, pursuant to the NMA, the Burkholders and Weavers have NMPs that address their ability to store manure associated with their agricultural activities on their properties as well as that the facts in *Burkholder* are examples of where "intensive agricultural activities" also are manure storage facilities.

of carcasses of domestic animals slaughtered for human food nor to the premises or the rendering operations on the premises of a licensed slaughter establishment subject to Federal or State inspection). Alternatively, the Township asserts that even if the Animal Law applies, it does not conflict with the Ordinance because section 2352 of the Animal Law addresses the methods for disposing of domestic animals, which includes composting, whereas section 804.7.c of the Ordinance addresses commercial composting but does not speak to the disposal of dead domestic animals. Finally, the Township maintains that there is nothing in the Animal Law that makes a clear statement of legislative intent to preempt any and all local legislation. We disagree.

As the Attorney General points out, nothing in the pleadings suggests that the Weavers' proposed poultry operation would include the licensed slaughtering of poultry or that the Weavers would be disposing of slaughtered poultry carcasses, and, therefore, the exception in section 2351 of the Animal Law does not apply. Moreover, because the Ordinance does not define "commercial composting," there is a factual dispute over whether this term includes the composting of dead domestic animals and domestic animal waste, an activity expressly authorized by the Animal Law. Finally, section 2389 of the Animal Law establishes the legislature's intent to preempt local legislation interfering with the Animal Law, stating, in relevant part, "[t]his chapter and its provisions are of Statewide concern and *shall* have *eminence* over any ordinance ... which pertain to ... the procedure for the disposal of dead domestic animals and domestic animal waste." 3 Pa.C.S. § 2389. (Emphasis added.) Accordingly, the Township

is not entitled to judgment on the pleadings on Count III.

### 4. Count IV

 In Count IV, the Attorney General avers that section 804.7 of the Ordinance restricts agricultural operations in violation of section 603(h) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10603(h).[12] That section states that zoning ordinances shall encourage the continuity, development and viability of agricultural operations and may not restrict agricultural operations or changes to or expansions of agricultural operations in geographic areas where agriculture traditionally has been present unless the agricultural operation will have a direct effect on the public health and safety. (Petition, ¶¶ 36–38.)

The Township argues that this section of the MPC does not bar a municipality from adopting an ordinance affecting agricultural operations that will have a direct and adverse effect on the public health and safety. Citing sections 103, 104 and 803.3 of the Ordinance, which are general statements regarding the purpose of the Ordinance and the special exception requirement for IAAs, the Township asserts that section 804.7 was adopted in order to protect the health and safety of the residents and workers on adjacent properties and neighborhoods from harm. Moreover, the Township states that the Attorney General has not pleaded facts and cannot demonstrate that the Ordinance will operate to restrict agricultural operations where those operations have not adversely affected public health or safety.

The Attorney General counters that Count IV is legally sufficient because the Township is restricting NAOs in a manner precluded by the MPC and imposing requirements on NAOs that exceed the pro-

---

**12.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10603(h).

visions of the state laws listed in the MPC, including, the NMA, the RFL and the Agricultural Area Security Law (AASL).[13] 53 P.S. § 10603(h). The Attorney General asserts that the Township has not set forth the health, safety or welfare issues from which section 804.7 is supposed to protect the public, and, therefore, a factual dispute remains over what these issues are.

We agree with the Attorney General that judgment on the pleadings on Count IV would be improper where disputed questions of fact remain regarding what, if any, public and safety reasons justify the Township's decision to regulate IAAs and NAOs differently. Moreover, because there is a question of fact regarding whether the term "intensive agricultural activities" includes "manure storage facilities" regulated by the NMA, the question of whether the Ordinance improperly restricts the Weavers' agricultural operations in violation of section 603(h) of the MPC likewise remains.

### 5. Count V

In Count V, the Attorney General avers that section 804.7 of the Ordinance unreasonably restricts farm structures and farm practices in violation of section 911 the AASL, 3 P.S. § 911. That section requires that every municipality or political subdivision that creates an ASA shall encourage the continuity, development and viability of agriculture within the area by not enacting laws or ordinances which would unreasonably restrict farm structures or farm practices within the area, unless such restrictions or regulations bear a direct relationship to the public health or safety. (Petition, ¶¶ 39–41.)

The Township contends that Count V should be dismissed because the Petition fails to state a claim for a violation of the AASL where it does not allege any facts which would indicate that any portion of the Ordinance regulates "farm structures" or "farm practices." Further, the Township asserts that the court needs to know how the Ordinance is being applied to a specific farm operation in order to make a determination under the AASL, and the Petition is devoid of any factual averments in this regard. We disagree.

Paragraph 39 of the Petition incorporates all of the prior paragraphs as though they were fully set forth. Accordingly, the allegations pertaining to the regulation of manure storage facilities, the prohibition on commercial composting, the disposal of solid and liquid wastes and the composting of dead domestic animals and domestic animal waste are included in Count V. Because the AASL does not define "farm structures" or "farm practices," there is a question of fact as to whether the Ordinance's regulation of the above structures and activities falls within the terms "farm structures" or "farm practices." Therefore, the Township is not entitled to judgment on the pleadings on Count V.

### 6. Count VI

In Count VI of the Petition, the Attorney General alleges that, because section 804.7.d of the Ordinance requires that solid and liquid wastes be disposed of in a manner that avoids creating a public nuisance, that section violates and is preempted by section 3 of the RFL, 3 P.S.

---

13. Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 901–915. Section 603(h) of the MPC also states that nothing in that section requires a municipality to adopt a zoning ordinance that violates or exceeds the provisions of the NMA, the RFL or the AASL. 53 P.S. § 10603(h). Thus, the legislature implicitly has determined that an agricultural operation complying with these acts does not constitute an operation that has a direct adverse effect on the public health and safety.

§ 953. Section 3 of the RFL provides that every municipality that defines or prohibits a public nuisance shall exclude from that definition any agricultural operation conducted in accordance with normal agricultural operations so long as the operation does not have a direct adverse effect on the public health and safety. *Id.* (Petition, ¶¶ 42–44.)

The Township argues that Count VI should be dismissed because the RFL applies only to nuisance ordinances: Section 6(b) of the RFL, 3 P.S. § 956(b). According to the Township, because the Ordinance is a *zoning* ordinance, not a nuisance ordinance, the RFL cannot be used to invalidate the Ordinance.

■■■ However, the placement of an ordinance in a zoning code is not determinative of whether the ordinance is a zoning ordinance or a nuisance ordinance. *Holt's Cigar Company v. Philadelphia,* 952 A.2d 1199 (Pa.Cmwlth.2008). Rather, it is the impact of the local legislation, not its location in the municipal code that is determinative of whether it is a zoning or a nuisance ordinance, *id.,* and we agree with the Attorney General that section 804.7.d is a *de facto* nuisance ordinance. Indeed, by stating that a farmer must dispose of solid and liquid wastes on a daily basis so as to avoid creating a public nuisance, section 804.7.d essentially is stating that the failure to dispose of liquid and solid wastes on a daily basis is a public nuisance. If a

normal agricultural operation does not require daily disposal of liquid and solid wastes, then the Ordinance's definition of "public nuisance" violates the RFL. Because this disputed question of fact remains, judgment on the pleadings on Count VI is not appropriate.

## III. Failure to State a Claim

■■■ Finally, the Township argues that the claims against the Board should be dismissed as legally insufficient. The Township contends that naming the Township and individual Board members in their official capacity as parties is unnecessary because the Board is not a suable entity and there is no legally discernable difference between the Township and the Board.[14] However, the Petition does not name as parties the individual Board members in their official capacities; rather, the Board is named as a party in its capacity as the governing body of the Township. Section 601 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65601 (stating that a township acts through its board of supervisors). Moreover, a board of supervisors often is named a party in land use matters. *See* sections 609.1 and 916.1 of the MPC.[15] Accordingly, the Township is not entitled to judgment on the pleadings for the claims against the Board.

For the foregoing reasons, the Township's Motion is denied in its entirety.

---

**14.** The Township relies on *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) and *Lakits v. York,* 258 F.Supp.2d 401 (E.D.Pa.2003) to support its argument. However, these cases are distinguishable because they involve section 1983 actions, 42 U.S.C. § 1983, against individual governmental actors in their official and individual capacities.

**15.** Section 609.1 was added by section 10 of the Act of June 1, 1972, P.L. 333, *as amended,* 53 P.S. § 10609.1. This section addresses a landowner's ability to challenge the substantive validity of a zoning ordinance adopted by a board. Section 916.1 was added by section 99 of the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10916.1, and sets forth the procedures for a landowner seeking a curative amendment to a zoning ordinance.

## ORDER

AND NOW, this 22nd day of May, 2009, the motion for judgment on the pleadings filed by Richmond Township and Richmond Township Board of Supervisors is hereby denied in its entirety.