## HHI TRUCKING & SUPPLY, INC.

### v.

### BOROUGH COUNCIL OF the BOROUGH OF OAKMONT, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 2009.

Decided March 5, 2010.

Shawn N. Gallagher, Pittsburgh, for appellant.

Patricia L. Dodge, Pittsburgh, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Council of the Borough of Oakmont (Borough Council) appeals an order of the Court of Common Pleas of Allegheny County (trial court) setting aside 14 of the 33 conditions imposed by Borough Council in connection with its grant of a conditional use to HHI Trucking & Supply, Inc. The trial court set aside the conditions because the evidence of record did not support their imposition. Finding no error in the trial court's conclusion, we affirm.

In March 2007, HHI requested approval to construct a ready-mix concrete plant on land located in the Borough of Oakmont (Property). The Property consists of a vacant, 3.2 acre plot that is located in the Borough's industrial zoning district, where a concrete plant is specifically permitted as a conditional use. HHI leased the land to be used for this purpose from Anthony Folino. Access to the Property is provided by Dark Hollow Road, which varies in width from 15.5 feet to 23 feet and lacks shoulders. The paving on Dark Hollow Road is marred by potholes, alligator cracking and rutting. At present, Dark Hollow Road experiences significant truck traffic from Folino Construction Company, which is located on land adjacent to the proposed location for HHI's plant.

In March 2007, the Borough's Planning Commission recommended approval of HHI's proposed development of the Property, subject to several conditions. Those recommendations included, *inter alia*, the following: that HHI limit its hours of operation from 7:00 a.m. to 5:00 p.m.; that HHI submit air quality reports annually; that HHI do an acoustic analysis; and that the Borough Traffic Engineer study the safety and adequacy of Dark Hollow Road.[1]

From September 2007 through March 2008, Borough Council conducted five hearings on HHI's conditional use application. The Oakmont Commons Homeowners' Association and a group of approximately 20 area residents objected to the application (Objectors) because HHI's proposed plant will be located near their residential neighborhood of townhouses and

1. The Borough Traffic Engineer studied the proposed plant's effects on the condition of Dark Hollow Road. The Traffic Engineer estimated that the increased truck traffic expected from the proposed plant would result in 200 heavy vehicles traveling Dark Hollow Road each day. Given this truck traffic, the Traffic Engineer recommended that stormwater drainage be improved and that the potholes and rutting in the road be corrected. His recommendation was placed into evidence at the hearing on HHI's conditional use application.

single family homes. The issue at the hearing was whether HHI's proposed plant satisfied the conditional use requirements set forth in the Borough of Oakmont Zoning Ordinance (Zoning Ordinance).[2]

HHI's nine witnesses established that commercial truck traffic on Dark Hollow Road has been a regular occurrence since the early 1960s, when an asphalt plant was built; it continued to operate until 1994. In 1995, Folino Construction, a topsoil reclaiming business, opened for business. It sends 40 to 50 trucks down Dark Hollow Road, which is fewer than the number formerly used by the asphalt plant. The trucks to be used by HHI are comparable in size to those used by Folino Construction.

HHI's witnesses addressed the construction and operation of its proposed concrete facility. They explained that the plant will consist of a series of storage bins and silos, as well as conveyor belts to move the materials used to make concrete. Concrete will be produced by depositing sand, aggregate, water and cement into cement trucks, which will combine these elements together while driving to the delivery site. A storm water retention pond and a series of pits will be built to reclaim water used during the cement-mixing process. The

plant will operate in the spring, summer and early autumn months because concrete cannot be poured while the ground is frozen.

With respect to the noise that will be generated by loading the cement trucks, HHI offered the testimony of Steven Roth, an acoustical expert. He explained that HHI will meet acceptable levels of noise for a residential property, as measured from the home closest to the plant,[3] by implementing his recommendations for reducing plant noise. Roth was critical of the Zoning Ordinance because it does not specify which of the American National Standards Institute (ANSI) standards should be used; as such, the Ordinance does not offer meaningful guidance. In developing his recommendations, Roth used ANSI Standard S–129.1, which addresses residential noise standards. HHI agreed to implement Roth's recommended sound controls in an effort to alleviate the neighbors' concerns about noise.

With respect to the plant's impact on air quality, HHI presented the testimony of John Frye, an expert in environmental health and safety issues. He concluded that the plant would not need a permit to operate because its impact on air quality would be negligible. The Allegheny County Health Department confirmed Frye's

---

2. ZONING ORDINANCE OF THE BOROUGH OF OAKMONT OF 1997 (ZONING ORDINANCE).

3. The only provision in the Zoning Ordinance that deals with noise states, in its entirety:
 A. Protection against the effects of noise exposure shall be provided by all commercial and industrial users within the borough. This does not pertain to normal truck and vehicular noises. Noise, as a consequence of regular activities, emitted from commercial or industrial operations inside or outside a building shall not exceed the acceptable maximum sound pressure level for residential areas measured with a sound level meter from the closest residence and conforming to standards pre-

scribed by the American National Standards Institute.
 B. Noise which is determined to be objectionable because of volume, frequency or beat shall be muffled or otherwise controlled. Fire sirens and related apparatus used solely for public purposes shall be exempt from this requirement. Noise shall not be such as to create a nuisance or hazard. Testing of noise levels, if required, shall be by qualified consultants.
 ZONING ORDINANCE § 205–105. The Zoning Ordinance does not define "acceptable maximum sound pressure level" and does not identify what level of noise is "objectionable."

judgment, stating in an April 2007 letter that the plant does not require an installation or operating permit because it "is a source of minor significance." Reproduced Record at 1093a (R.R. ___). Borough Council found, as fact, that HHI's proposed plant meets all county and state air quality standards. Nevertheless, HHI voluntarily agreed to install fabric collectors and bag houses to collect particulates generated by the loading of the cement-mixing trucks.

With respect to the plant's impact on traffic on Dark Hollow Road, HHI presented the testimony of Chuck Wooster, a traffic engineering expert. Wooster explained that HHI's plant will add little to the truck traffic on Dark Hollow Road because Folino Construction's trucks would pick up and deliver aggregate to the plant as needed on their return trips to the adjacent property.[4]

In response to HHI's case, Objectors argued that the plant would not comply with the noise standards in the Zoning Ordinance. They also asserted that the 20–ton concrete trucks used to make deliveries to the plant would exacerbate the damage to Dark Hollow Road caused by Folino Construction's trucks.

In support of their noise claims, Objectors presented the testimony of Dr. William Thornton, an expert in acoustics, vibrations and noise. Dr. Thornton opined that the plant would grossly exceed acceptable noise levels for a residential community. On cross-examination, however, Dr. Thornton conceded that the Zoning Ordinance is vague and ambiguous.

Several residents then testified about the ways that the proposed plant would adversely affect their residential community. Beth Cameron, an artist whose home is located 422 feet from the Property, testified that the noise generated by Folino Construction operations has already adversely affected her enjoyment of her home. Bruce Cosentino, another neighbor, testified that it is physically impossible for two vehicles to pass one another at the narrowest points on Dark Hollow Road. Dean Hornsby, another neighbor, testified that he has "seen vehicles actually pull off, and they have fallen into the side of the road." R.R. 731a. He further stated that he once spotted a Folino Construction truck in a ditch along Dark Hollow Road.

In June 2008, Borough Council granted HHI's application subject to 33 conditions addressing, *inter alia*, plant operations; grading, erosion and sedimentation and stormwater management; air quality; screening and landscaping; signage; lighting; noise controls and sound attenuation; and traffic improvements. HHI appealed 14 of the 33 conditions, arguing that they were unreasonable and effectively prevent it from either building or operating its proposed plant. The challenged conditions, excerpted from Borough Council's decision, are as follows:

**General Conditions**

HHI shall reimburse the Borough for all plan review fees, hearing fees, and other fees permitted by the Municipalities Planning Code [5] incurred during the

---

4. Wooster acknowledged that Dark Hollow Road should be widened in places, but not because of the slight increase in truck traffic associated with HHI's proposed plant. In fact, Wooster opined that the poor condition of the pavement was caused not by truck

traffic but by natural factors, such as stormwater erosion.

5. Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

conditional use review process. (Condition No. 3)

## Operations

The Concrete Plant shall only operate between the hours of 7:00 a.m. and 5:00 p.m., Monday through Friday. (Condition No. 4)

All deliveries to the Concrete Plant shall be between the hours of 7:00 a.m. and 5:00 p.m., Monday through Friday. (Condition No. 5)

Cement shall be delivered to the Concrete Plant no more than once a week. (Condition No. 6)

\* \* \*

HHI shall control dust by wetting down materials on dry days. (Condition No. 8)

\* \* \*

## Air Quality

All HHI owned diesel vehicles accessing the Subject Property shall be equipped with diesel particulate filters. (Condition No. 13)

All diesel vehicles and equipment located on the Subject Property shall never idle longer than 15 minutes. (Condition No. 14)

HHI shall hire a qualified and independent expert to conduct annual air quality studies that Allegheny County air pollution/emission standards are being met, and submit such air quality reports to the Borough Manager by the 1st of June every year. (Condition No. 15)

\* \* \*

## Noise Controls and Sound Attenuation Improvements

Within three months of the commencement of operations, HHI shall hire Mr. Roth or another qualified sound consultant to perform a post-construction noise study of the Concrete Plant's operations to test the accuracy of Mr. Roth's suggested recommendations and submit such post-construction noise study to the Borough Manager. (Condition No. 24)

\* \* \*

## Transportation and Traffic Improvements

On behalf of HHI, Mr. Folino shall facilitate and pay for the engineering and construction of roadway improvements to widen Dark Hollow Road the entire length of Dark Hollow Road from Plum Street to New London Lane to alleviate existing structural and safety problems that exist due to the current narrowness of Dark Hollow Road in accordance with the Borough of Oakmont's Engineering Design Standards ("Dark Hollow Road Improvements"). Any deviation from the Borough of Oakmont's Engineering Design Standards must be reviewed and approved by the Borough Traffic Engineer. (Condition No. 28)

\* \* \*

HHI shall enter into an agreement with the Borough, in a form acceptable to the Borough Solicitor, which shall address the following: (a) the structure by which HHI shall facilitate and pay for the implementation of the Dark Hollow Road Improvements; (b) the structure by which HHI shall facilitate and pay for the implementation of the Traffic Engineering Requirements; and (c) the payment structure by which HHI shall reimburse the Borough or directly pay for the Borough Traffic Engineer's review, approval and inspection of the Dark Hollow Road Improvements and Traffic Engineering Requirements. (Condition No. 30)

The Dark Hollow Road Improvements and Traffic Engineering Requirements shall be to the satisfaction of the Borough Traffic Engineer. (Condition No. 31)

The Dark Hollow Road Improvements and Traffic Engineering Requirements shall be accomplished prior to the start of operations of the Concrete Plant. (Condition No. 32)

HHI, or its designee, shall submit a bond, in an amount approved by the Borough Traffic Engineer, to ensure the completion of the Dark Hollow Road Improvements and Traffic Engineering Requirements. (Condition No. 33)

Borough Council's Decision, 06/10/08, at 28–31.

Without taking any additional evidence, the trial court affirmed the approval of HHI's application, but it voided Borough Council's imposition of the above-listed 14 conditions, reasoning that these conditions lacked any support in the record evidence. Borough Council appealed the trial court's order.

■■■ On appeal,[6] Borough Council contends that the trial court's order is deficient because it did not specifically address each of the 14 conditions that it set aside for the same reason, i.e., lack of support in the record. Borough Council contends that, in effect, the trial court placed the burden on Borough Council to justify each condition. This was error, it explains, because it was HHI's burden on appeal to establish how Borough Council abused its discretion in devising each of the 14 conditions.

In response, HHI contends that conditions that lack support in the record are inherently unreasonable. HHI disagrees that the trial court's opinion was insufficiently explained, noting that the trial court focused on the principal condition on which the other conditions were premised, eliminating the need to address each dependent condition separately.

■■■ The law on conditional uses is well-settled. A conditional use is one that has been legislatively approved for a particular zoning district, so long as the proposed use satisfies the standards for such a use set forth in the zoning ordinance. *Ligo v. Slippery Rock Township,* 936 A.2d 1236, 1242 (Pa.Cmwlth.2007). Once that burden is satisfied, the applicant is entitled to the conditional use, and the burden shifts to the objectors. The objectors must prove, to a high degree of probability, that aspects of the proposed use will adversely impact the health, safety and welfare of the community in ways not expected by the legislative body when it established its list of approved, conditional uses. *East Manchester Zoning Hearing Board v. Dallmeyer,* 147 Pa.Cmwlth. 671, 609 A.2d 604, 610 (1992). Speculation of possible harms is not sufficient to satisfy this burden. *Id.*

■■■ A municipality may attach conditions to its grant of a conditional use. Section 913.2(a) of the Pennsylvania Municipalities Planning Code (MPC) states, in relevant part, as follows:

In granting a conditional use, the governing body may attach such *reasonable conditions* and safeguards, in addition to

---

**6.** Where, as in this case, a trial court does not take additional evidence in a zoning case, this Court is limited to determining whether the borough council committed an error of law or manifestly abused its discretion. *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board,* 944 A.2d 832, 837–838 (Pa.

Cmwlth.2008). An abuse of discretion occurs when the borough council's findings are not supported by substantial evidence in the record; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 838 n. 9.

those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance.

53 P.S. § 10913.2(a)(emphasis added).[7] Reasonable conditions are those that advance a valid zoning interest and are supported by the evidence of record. *See* ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE § 9.4.19 (1981).

We begin with Borough Council's contention that the trial court placed the burden on it to show that its conditions were reasonable. This was error the Borough argues, because it was HHI's burden to prove that Borough Council abused its discretion in fashioning the 14 conditions at issue in this appeal. In support, Borough Council directs us to *Leckey v. Lower Southampton Township Zoning Hearing Board,* 864 A.2d 593, 596 (Pa.Cmwlth. 2004), in which this Court stated:

> Because, under the MPC, the Board, utilizing its grant of discretionary power to make a judgment, can impose conditions "it may deem" necessary, *a court reviews a challenge to the reasonableness of those conditions;* it does not determine whether there is substantial evidence, which is a "fact standard," but *whether those conditions constitute an abuse of discretion.* Like in any abuse of discretion review, the Board is not required to support the imposition of conditions; rather, the opposite is true—*property owners are required to show that the imposition of conditions was an abuse of discretion.*

(emphasis added). We reject Borough Council's argument.

First, the trial court did not place the burden upon Borough Council. Rather, the trial court held that HHI met its burden on appeal by showing that the 14 conditions were unreasonable.

Second, *Leckey* does not mean, as suggested by Borough Council, that a municipality can devise conditions out of thin air and without any reference to the record evidence. The trial court held, although not expressed in precisely this way, that where a municipality imposes a condition to prevent "harm" for which there is no evidence in the record, that condition is not reasonable. Stated otherwise, the municipality abuses its discretion when it imposes a condition without supporting evidence in the record. This logic is consistent with our holding in *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board,* 944 A.2d 832 (Pa. Cmwlth.2008), where we stated that when findings of a zoning hearing board are not supported by record evidence, the board has abused its discretion.

■ Third, a reasonable condition is one that relates to a standard adopted in the applicable zoning ordinance. This is necessary because a zoning hearing board's jurisdiction is limited to enforcement of the zoning ordinance. A zoning hearing board does not enjoy broad, inchoate powers to advance its members' vision of what constitutes the public welfare or even the public welfare as defined in a variety of environmental protection statutes, be they state or federal. Other governmental agencies bear that enforcement authority.[8] A zoning hearing board's au-

---

**7.** Section 913.2 of the MPC was added by section 93 of the Act of December 21, 1988, P.L. 1329.

**8.** When a municipality takes it upon itself to enforce non-zoning statutes, there can be inconsistent results. This is precisely what happened here. For example, Borough Council imposed a condition limiting the idling time of HHI's trucks to 15 consecutive minutes. However, Allegheny County Health Department's regulations limit the idling time of such trucks to 5 consecutive minutes. Fur-

thority is defined by the MPC and the zoning ordinance.

■ In sum, to be reasonable, a condition must relate to a zoning ordinance standard or be authorized by the MPC. Factual findings on which the condition is premised must be supported by record evidence. If not, a zoning hearing board, or municipality, abuses its discretion when it imposes such a condition. In *Commonwealth ex rel. Corbett v. Snyder*, 977 A.2d 28 (Pa.Cmwlth.2009), this Court defined an abuse of discretion as "a judgment that is plainly unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will." *Id.* at 41 (quoting *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa.Super.2007)). Using this analytical framework, we consider whether the Board abused its discretion with respect to the 14 conditions.

■ We begin with Condition No. 3, which required HHI to reimburse the Borough for more than $32,000 for certain fees, later reduced to $5,563.97.[9] HHI acknowledges that under the MPC, it can be required to reimburse the Borough for some of those fees, such as advertising and court reporting fees, but not traffic engi-

neering fees. Section 617.3(e) of the MPC [10] states, in relevant part, as follows:

> The governing body may prescribe reasonable fees with respect to the administration of a zoning ordinance and with respect to hearings before the zoning hearing board. Fees for these hearings may include compensation for the secretary and members of the zoning hearing board, notice and advertising costs and necessary administrative overhead connected with the hearing. *The costs, however, shall not include legal expenses of the zoning hearing board, expenses for engineering, architectural or other technical consultants or expert witness costs.*

53 P.S. § 10617.3(e) (emphasis added).[11] We agree that Condition No. 3 violates Section 617.3(e) and, therefore, is unreasonable.

Borough Council defends its effort to recover engineering fees by invoking Section 503 of the MPC, 53 P.S. § 10503, which authorizes the recovery of professional consulting fees incurred in the course of a planning and subdivision proceeding.[12] This argument lacks merit.

---

ther, Borough Council attempted to require HHI to perform air quality tests although HHI had met the County's applicable air quality standards to the satisfaction of the County Health Department.

9. According to the Borough, the breakdown of the costs submitted to HHI for reimbursement includes: $2,569.29 for engineer's plan review; $1,311.68 for advertising; and $1,683.00 for court reporting and transcription fees. At issue here is the $2,569.29 engineering review fee.

10. Added by section 62 of the Act of December 21, 1988, P.L. 1329.

11. Moreover, the two cases the Borough Council cites for support of its argument that these expenses can be billed to HHI pre-date

the adoption of Section 617.3(e) and accordingly, have been superseded by statute.

12. It provides, in relevant part, that the subdivision and land development ordinance (SALDO) of a municipality *may* include

> [p]rovisions for the submittal and processing of plats, including *the charging of review fees* . . . . Review fees may include reasonable and necessary charges by the municipality's *professional consultants* for review and report thereon to the municipality. *Such review fees shall be based upon a schedule established by ordinance or resolution.* Such review fees shall be reasonable and in accordance with the ordinary and customary charges for similar service in the community, but in no event shall the fees exceed the rate or cost charged by the professional consultant for comparable ser-

First, Borough Council did not identify any provision in the Borough's SALDO that authorizes the recovery of engineering fees. Unless the review fees are in a "schedule established by ordinance or resolution," they are not recoverable under Section 503. Second, the engineering fees imposed by Borough Council resulted from its zoning hearing; as such the fees are governed by Section 617.3(e) of the MPC, not Section 503.

■■■ Next we consider Condition Nos. 4 through 6 and 8, which limit HHI's operations in a variety of ways. These conditions limit HHI operations to the hours between 7:00 a.m. and 5:00 p.m.; restrict HHI to one cement delivery per week; and require HHI to wet down materials on "dry days." Again, we agree with the trial court that these conditions are not reasonable.

The record is devoid of evidence that longer hours of operation would cause some harm that violates the Zoning Ordinance. On the other hand, HHI's evidence showed that the hours imposed by Borough Council would make it uncompetitive in the industry. The record is also empty of evidence that a second delivery to HHI's plant in a single week would be harmful to the neighbors or community as a whole. In contrast, HHI proved that it would be forced to cease operations at the plant should it run out of supplies before the week's end. No evidence was presented that HHI's operations will produce unsafe levels of dust, but Borough Council ordered "wet downs" on "dry days." Apart from the lack of evidence for this limit, it is too vague to implement because Borough Council did not explain how much "wetting down" should be done or what constitutes a "dry day."

■■■ Next, we consider Condition Nos. 13 through 15, which relate to air quality. They require HHI's trucks to be equipped with diesel particulate filters and not idle longer than 15 minutes. They direct HHI to conduct annual air quality studies and submit these reports to the Borough Manager. Again, we agree with the trial court that these conditions are not reasonable.

The condition limiting HHI's truck operations has not been imposed on any other trucks using Dark Hollow Road, making it discriminatory. Further, the limits on the idling time of HHI's trucks conflicts with the Allegheny County Health Department's regulations. ALLEGHENY COUNTY HEALTH DEPARTMENT RULES AND REGULATIONS, Art. XXI, § 2105.92 (added June 2005). The County limits the idling time of a heavy duty diesel truck to five consecutive minutes. However, these regulations provide important exceptions for, *inter alia,* warming up the trucks during the winter and queuing in supply lines. The Borough would deprive HHI of its right to these exceptions.

The imposition of air quality studies upon HHI is likewise unfounded. The Allegheny County Health Department had no concerns about the plant's impact on air quality, and Borough Council found, as fact, that the plant met all applicable air quality standards. Borough Council's Decision, 06/10/08 at 16; Finding of Fact No. 88. In light of this finding alone, Borough Council lacked any basis for requiring air quality studies.

■■ Next, we consider Condition No. 24, which relates to noise. Because the Zoning Ordinance lacks any noise stan-

vices to the municipality for services which are not reimbursed or otherwise imposed on applicants.

53 P.S. § 10503(1) (emphasis added).

dards suitable for a residential community, Borough Council lacked authority to act. Nevertheless, HHI agreed to implement five of the six noise control conditions imposed by Borough Council. The sole condition challenged was the condition that HHI undertake a post-construction noise study of the Plant.

The Zoning Ordinance requires "objectionable" noises to be muffled but to an unknown extent and by unknown means. ZONING ORDINANCE § 205–105(B).[13] It states that noise in residential areas may

> not exceed the *acceptable* maximum sound pressure level for residential areas measured with a sound level meter from the closest residence and conforming to standards prescribed by [ANSI].

ZONING ORDINANCE § 205–105(A) (emphasis added). The terms "objectionable" and "acceptable" are not defined, and the Zoning Ordinance does not specify which ANSI standard should be used to measure the sound pressure level. In the absence of such specificity, Borough Council's required study is impossible of execution and, as such, unreasonable.[14] *See Commonwealth v. Richmond Township*, 975 A.2d 607, 613 n. 9 (Pa.Cmwlth.2009) (holding that the township's ordinance was unenforceable because it failed to provide adequate guidance on determining when a normal agricultural operation will be transformed into an "intensive" agricultural operation).

 Finally, we consider Condition Nos. 28, and 30 through 33, which relate to traffic control. They require HHI to widen the entire length of Dark Hollow Road, even though HHI will use only a small portion of the road. These conditions are unreasonable *per se* because Section 603(c)(2) of the MPC states, in relevant part, as follows:

> [i]n allowing a conditional use, the governing body may attach such reasonable conditions and safeguards, *other than those related to off-site transportation or road improvements* . . . .

53 P.S. § 10603(c)(2) (emphasis added). Condition Nos. 28, and 30 through 33 relate "to off-site transportation or road improvements"[15] and, as such, are unlawful.

In sum, we hold that the 14 conditions imposed by Borough Council and challenged by HHI were unreasonable. In the absence of evidence in the record explaining their need, these conditions appear to have been drawn from thin air, which is arbitrary and capricious. Further, without evidence, it is impossible to determine whether the municipality has acted reasonably in its imposition of a condition. In addition, some of the conditions are inconsistent with the MPC or lack any support in the Zoning Ordinance. Borough Council abused its discretion in imposing the 14 conditions and, accordingly, we affirm the trial court.

---

**13.** *See supra* note 3.

**14.** Borough Council contends that HHI agreed to a post-construction noise study. HHI did not. It could not do a study or test in the absence of objective noise standards.

**15.** Borough Council argues that notwithstanding this Court's disposition of the appealed traffic-related conditions, HHI must improve the portion of Dark Hollow Road that abuts Mr. Folino's property, claiming this

is an "onsite improvement." This argument has no merit because HHI did not appeal the only traffic-related condition that required the dedication of a ten-foot right of way on the Property to widen Dark Hollow Road. The traffic-related conditions that HHI appealed specifically require HHI to widen the entire length of Dark Hollow Road from Plum Street to New London Lane; these are clearly "off-site transportation or road improvements." 53 P.S. § 10603(c)(2).

## ORDER

AND NOW, this 5th day of March, 2010, the order of the Court of Common Pleas of Allegheny County, dated February 20, 2009, in the above-captioned matter is hereby AFFIRMED.