IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Charles Chrin Real  :
Estate Trust from the Decision of the  :
Palmer Township Board of Supervisors  :
  :
Appeal of: The Charles Chrin Real  : No. 444 C.D. 2025
Estate Trust  : Submitted: May 12, 2026


BEFORE:   HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                       FILED:  June 22, 2026

The Charles Chrin Real Estate Trust (Applicant) appeals from the order of the Court of Common Pleas of Northampton County (Common Pleas), dated February 27, 2025, affirming the adjudication of the Palmer Township (Township) Board of Supervisors (Board), dated October 2, 2023.  Applicant challenges the determination that it was not entitled to conditional use approval.  After careful review, we affirm.

**BACKGROUND**

Applicant filed a conditional use application, requesting approval to construct an approximately 43,120-square-foot multi-tenant manufacturing facility (Facility), including loading docks and parking spaces for trailers and passenger vehicles, in the Township's Planned Industrial/Commercial District.  Reproduced Record (R.R.) at 349a, 352a-53a.  Significantly, the application did not list any future tenant or tenants

for the Facility, indicating instead that the business, hours and days of operation, and number of employees were "To Be Determined." *Id.* at 7a. The Township's Zoning Ordinance of 1994 (Ordinance) provides as follows:

> The following are conditional uses in the [Planned Industrial/Commercial] District, provided that all other requirements of this [O]rdinance are complied with, especially including [Sections] 190-208, 190-210 and 190-211:
>
> . . . .
>
>     D.    Industrial activity involving processing, cleaning, assembling, packaging, conversion, production, repair, manufacturing or testing of materials, goods and/or products (other than those uses specifically permitted by right), that the applicant proves, to the satisfaction of the Board . . . , based upon review by the Planning Commission, will not create a significant hazard to the public health and safety. These uses shall not include any use specifically prohibited by the regulations of this district. These uses shall comply with the performance standards of Article XVI. These industrial activities include but are not limited to the following:
>
>         (1)    Testing and repair of manufactured products.
>
>         (2)    Manufacture of products requiring light metal processing, including finishing, grinding, polishing, heat treating and stamping.
>
>         (3)    Packaging and bottling operations with no retail activity on the lot.
>
>         (4)    Manufacture and assembly of products from previously prepared materials, such as plastic, leather, glass, cellophane or textiles.

>     (5)    Manufacture of jewelry, precision instruments, optical good and similar products.
>
>     (6)    Manufacture and assembly of small electrical and electronic appliances, supplies and equipment.

Section 190-125(D) of the Ordinance (emphasis omitted).

Relevant to this appeal, the Ordinance generally requires that an applicant for a conditional use submit a site plan. *See* Section 190-208(A) of the Ordinance. The Ordinance requires that certain information be submitted with the site plan but also provides an exception where approval is required under the Township's Subdivision and Land Development Ordinance (SALDO):

> A.    When site plan required. A site plan review by the Planning Commission and Board . . . under this section is required for any of the following uses unless the physical layout of the principal building(s) and use will be approved under the [SALDO].
>
> . . . .
>
>     (5)    Any conditional use, except a routine replacement of one commercial use by another commercial use of similar intensity, within an existing building and using existing parking.
>
> . . . .
>
> C.    Submission requirements for site plan review. The following information, as applicable, shall be submitted by the applicant for any conditional use or any use required to submit a site plan under Article XX or this section, except for information waived by the [z]oning [o]fficer as not applicable or necessary. If a conditional use review will also need approval of the physical layout under the [SALDO], then the [z]oning [o]fficer may permit an applicant to satisfy the conditional use plan requirement with a plan meeting the sketch plan requirements of

3

the [SALDO], provided that such plan provides sufficient information to determine compliance with this . . . Ordinance.

    (1)    A statement describing the proposed use, including proposed maximum hours of operation, maximum number of employees on the highest shift and the type of services or type of manufacture.

        . . . .

    (8)    Nuisances and safety. A description of any proposed industrial or commercial operations or storage in sufficient detail to indicate potential nuisances and hazards regarding noise, large trucks, glare, air pollution, odors, dust, fire or toxic or explosive hazards or other significant hazards to the public health and safety, together with proposed methods to control such hazards and nuisances.

Section 190-201(A)(5), (C)(1), (8) of the Ordinance (emphasis omitted).

The Board conducted hearings on June 27, 2023, July 25, 2023, and August 29, 2023. Applicant's witnesses acknowledged during the hearings that there was no intended tenant or tenants for the Facility. Applicant's project engineer, Andrew Woods, testified the Facility could be occupied by "one or multiple" tenants, and "we don't know the intended users." R.R. at 236a, 239a. In addition, Applicant's traffic operations expert, James Milot, agreed "we don't have a tenant. There is a potential for multiple uses within this type of site." *Id.* at 249a. Applicant's counsel asserted it was not possible to identify future tenants because "the process of getting approved and building takes much longer than the period of time when companies are looking for space. They're going to look for a year. This is at least a two year process." *Id.* at 243a-44a. Applicant's counsel insisted, however, that "[the] use of this building will be one of the uses permitted by the [O]rdinance."[1] *Id.* at 314a.

_____

[1] No objectors opposed Applicant's application.

By adjudication dated October 2, 2023, the Board denied the conditional use application. The Board determined Applicant failed to establish compliance with the site plan requirements of Section 190-201(C)(1) and (8) of the Ordinance because it did not identify the tenant or tenants who would ultimately occupy the Facility:

> In its [a]pplication and at the [h]earing, the Applicant failed to present any information or evidence as to the type of services or type of manufacturing that will be conducted at the [p]roperty. As the Applicant stated throughout the [h]earing, the tenant(s) of the [Facility] are unknown. Furthermore, stating that the number of employees and hours of operation are to be determined, constitutes a promise to comply which is not sufficient to establish compliance with the . . . Ordinance.
>
> . . . .
>
> Because the Applicant does not have a known tenant(s), the Applicant cannot speak to the specific operations that will be conducted at the [p]roperty. The Applicant describes the proposed use as an "industrial activity involving processing, cleaning, assembling, packaging, conversion, production, repair, manufacturing or testing of materials, goods and/or products." The goods and products market is endless, and the impact from this type of industrial activity varies greatly depending on what is being manufactured, processed, or assembled. Applicant failed to even attempt to narrow down the types of goods or products that would be manufactured or assembled on the [p]roperty. Being fully informed of the operational nature of the proposed use is essential information the Board requires to be fully informed of the potential hazardous, toxic, flammable, and explosive materials stored onsite, as well as the potential negative impacts from noise, dust, odors, and other types of pollution the proposed use will have on the community. Additionally, industrial uses implicate a wide array of concerns not typically encountered with other types of generic uses such as restaurants, offices, or retail. Therefore, by allowing Applicant's proposed use without knowing the operations of the tenant(s), the Board would be negligent in its duty and responsibility to examine these issues.

R.R. at 357a-58a.[2]

Applicant appealed to Common Pleas, which heard argument but did not take additional evidence. By order dated February 27, 2025, Common Pleas affirmed the Board. In response to Applicant's contention that identifying future tenants does not relate to any specific criteria of the Ordinance, Common Pleas cited the requirement in Section 190-201(C)(1) of the Ordinance that a site plan must include a description of the proposed use, maximum hours of operation, maximum number of employees, and "the type of services or type of manufacture." R.R. at 399a-401a. Moreover, in response to Applicant's contention that the Board capriciously disregarded evidence of compliance, Common Pleas explained the Board acted within its discretion, and the record supported its decision to afford Applicant's evidence little weight. *Id.* at 402-03a. Applicant timely appealed to this Court.

**DISCUSSION**

Because Common Pleas did not take additional evidence, we must review the decision of the Board to determine whether it committed an abuse of its discretion or an error of law. *Harvin. v. Bd. of Comm'rs of Upper Chichester Twp.*, 33 A.3d 709, 713 n.7 (Pa. Cmwlth. 2011). Further, to the extent Applicant's appeal requires us to interpret the Ordinance, this presents "a question of law for which our standard of review is de novo and our scope of review is plenary." *Weiler v. Stroud Twp. Zoning*

---

[2] For the same reason, the Board concluded Applicant did not establish compliance with the general standards for conditional uses found at Section 190-208(D)(5) of the Ordinance, requiring that a conditional use shall "[n]ot be detrimental to the public health, general welfare, safety or morals," and with the requirement in Section 190-125(D) that an applicant must prove a use "will not create a significant hazard to the public health and safety." R.R. at 356a-59a. The Board also concluded Applicant failed to establish compliance with the provision in Section 190-208(F)(4) that the Board may deny the conditional use if traffic studies indicate "the existing road system is unable to handle the projected traffic at an acceptable level or that very serious hazards would be created." *Id.* at 359a-60a.

6

*Hearing Bd.*, 300 A.3d 1121, 1126 (Pa. Cmwlth. 2023). Stated differently, we do not defer to the decisions below and may review the entire record on appeal.

"A conditional use is one that has been legislatively approved for a particular zoning district, so long as the proposed use satisfies the standards for such a use set forth in the zoning ordinance." *HHI Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*, 990 A.2d 152, 159 (Pa. Cmwlth. 2010). Generally, we have summarized the burden of proof in conditional use proceedings as follows:

> The applicant bears the burden of establishing that the proposed conditional use satisfies the specific criteria in the zoning ordinance. The board is the factfinder, with the responsibility for credibility determinations and the weight to be assigned the evidence. If the board is persuaded that the application complies with the zoning ordinance, a presumption arises that the proposed use is consistent with the general welfare of the community. A conditional use evidences a legislative determination that the use will not have an adverse impact on the public interest in normal circumstances.
>
> The burden then shifts to [the] objectors to rebut the presumption by proving that there is a high degree of probability the proposed use will adversely affect the welfare of the community in a way not normally expected from the type of use. Mere speculation of possible harm is not sufficient, and the objectors' burden may not be satisfied with personal opinion or bald assertions. Pointedly, a conditional use application *must* be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety and welfare.

*Brookview Solar I, LLC v. Mount Joy Twp. Bd. of Supervisors*, 305 A.3d 1222, 1233 (Pa. Cmwlth. 2023) (citations and quotation marks omitted, alteration and emphasis in original).

Case law provides that "a key element in evaluating conditional use decisions by a governing body is whether requirements contained in the zoning ordinance are specific and objective or vague and subjective." *Williams Holding Grp., LLC v. Bd.*

*of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1213 (Pa. Cmwlth. 2014). A vague or subjective requirement "may be either one that may not be enforced or one for which an applicant bears no initial evidentiary burden." *Id.* Consistent with this principle, we have explained:

> [W]here the zoning ordinance places the burden of proof on the applicant to demonstrate that the requested conditional use will not detrimentally affect the health, safety, and general welfare of the community, then the applicant has the initial burden to produce evidence, and also to prove, that its proposed use meets all of the specifications and requirements provided by the [ ] zoning code for the grant of a conditional use. At that point, the objectors have a burden to produce evidence showing that the proposed development would have a detrimental effect on the health, safety, and welfare of the community. If the objectors produce such evidence, the applicant must then prove that the intended use would not violate the health, safety, and general welfare of the community with relation to such objections.

*Brookview*, 305 A.3d at 1242 (citations and quotation marks omitted).

Although Applicant lists several issues in its appellate brief, all of these issues relate to the Board's conclusion that Applicant could not establish compliance with the Ordinance without identifying the Facility's future tenants. Applicant maintains "there are no express standards or criteria" in the Ordinance that require it to identify future tenants for the purpose of obtaining conditional use approval. Applicant's Br. at 25. According to Applicant, "all that can be required at the conditional use stage" is information regarding "the nature of the proposal, its size and location." *Id.* at 27. Information regarding future tenants, Applicant insists, is "appropriately considered during the land development, zoning permitting and building permitting stages of the land development process." *Id.* at 26. Applicant contends that even if the Ordinance contained a requirement to identify future tenants, the requirement would exceed the scope of the conditional use process and be unlawful. *Id.* at 29. Applicant contends

8

any contrary conclusion would create an absurd result because it would be unlikely if not impossible for an applicant under these circumstances to secure a specific tenant in advance. *Id.* at 29-30.

In a related argument, Applicant asserts a site plan review was not required in this matter because the Facility will require review and approval under the SALDO. Applicant's Br. at 37. Insofar as a site plan review was required, Applicant contends the site plan requirements of the Ordinance are not specific and objective standards but instead list "information and materials required to be submitted by an applicant for conditional use . . . before such application may be reviewed by the Board." *Id.* at 33-34. Applicant maintains it was not required to identify future tenants as a part of its site plan, asserting only the zoning officer has reviewing authority regarding site plans, and the Board's role is "strictly advisory." *Id.* at 31-33. In addition, Applicant contends the Township violated Section 190-201 of the Ordinance and "breached its duty of good faith" because, if the application was lacking, the zoning officer should have refused to accept it or notified Applicant of the alleged deficiencies. *Id.* at 41-43. Applicant argues it should have received a reasonable opportunity to correct the alleged deficiencies. *Id.*

Alternatively, Applicant argues it provided the Board "with the informational items detailed in Section 190-201 that the Board erroneously alleged [Applicant] left unanswered" and its evidence was sufficient to demonstrate compliance with Section 190-201 of the Ordinance. Applicant's Br. at 47. Applicant asserts the evidence of record shows the Facility will include uses permissible under Section 190-125(D) of the Ordinance and will not create a nuisance, pose a significant risk to the public, or result in significant traffic, among other things. *Id.* at 44-47. The Board capriciously disregarded this evidence, Applicant contends, and its credibility determinations are

subject to reversal. *Id.* at 48. Applicant maintains the Board "failed to apply proper legal standards, ignored the evidence presented, and failed to assign the evidentiary weight warranted to [Applicant's] uncontradicted, probative evidence presented."[3,4] *Id.* at 49.

This Court addressed a series of similar arguments in *Brookview*. In that case, Brookview Solar I, LLC (Brookview) filed an application seeking a conditional use to construct a "solar energy system." *Brookview*, 305 A.3d at 1226-27. Brookview's application was denied by operation of law. *Id.* at 1228. Brookview appealed to the trial court, which also denied the application. *Id.* at 1226. In doing so, the trial court identified deficiencies in Brookview's site plan "related to stormwater management; access drive and interior travel aisles; and maximum lot coverage." *Id.* at 1231. On appeal, Brookview argued it was not necessary to submit detailed plans with respect to these issues, which would "be addressed at a later phase in the permit process." *Id.*

---

[3] Finally, Applicant challenges the Board's conclusion that it failed to establish compliance with the general conditional use requirements of Section 190-208 of the Ordinance. Applicant's Br. at 49. Applicant maintains the requirements of Section 190-208 are subjective, rather than objective standards, and it did not have the burden of establishing compliance with those standards to receive conditional use approval. *Id.* at 50. Applicant argues it established compliance with the objective standards of the Ordinance, and there were no objectors to rebut Applicant's evidence. *Id.* at 51-52. Given our disposition below, that Applicant failed to satisfy the requirements of Section 190-201, we do not consider this argument.

[4] The Board contends Applicant waived any challenge relating to its noncompliance with Section 190-125 of the Ordinance by failing to preserve such a challenge in its concise statement of errors complained of on appeal. Board's Br. at 13-15. We conclude Applicant's assertion in its concise statement that it satisfied the objective criteria of the Ordinance and was entitled to conditional use approval is sufficient to prevent waiver. *See* R.R. at 429a-32a. The Board also argues the property where the Facility would be constructed violates the Ordinance's minimum tract size requirements, which serves as another basis for denying the conditional use. *Id.* at 31-35. Once again, given our disposition below, that Applicant failed to satisfy the requirements of Section 190-201, we do not consider this argument.

10

at 1236. This Court explained that "the parameters of a conditional use application are determined by the terms of the particular zoning ordinance." *Id.*

Regarding stormwater management, Brookview asserted, in part, that it could not address all the requirements "because its solar energy system is at the preliminary planning stage." *Brookview*, 305 A.3d at 1239. Brookview's engineer testified that it would be possible to create a preliminary stormwater plan, but that it would be too speculative to provide a detailed plan. *Id.* We concluded Brookview was not entitled to relief because its failure to address stormwater management in the site plan meant its "application did not satisfy a specific conditional use requirement" in the relevant ordinance. *Id.* Similarly, we concluded Brookview "acted at its peril by ignoring the express requirement" that it "identify the access drive and interior travel aisles." *Id.* at 1240. As for maximum lot coverage and open space requirements, we concluded Brookview did not satisfy its burden of proof. *Id.* at 1239. We explained that "[t]he trial court found the record devoid of any discussion on the open space on the parcels," and that the trial court did not credit Brookview's evidence on the maximum lot coverage "because it was based upon a hypothetical solar panel size; Brookview ha[d] not yet chosen the actual solar panel size." *Id.*

Brookview also relied on a review by the township zoning officer, contending the zoning officer "advised Brookview that its application was complete and that the specific conditional use provisions . . . had either been satisfied or did not need to be addressed at this stage of the permitting process." *Brookview*, 305 A.3d at 1236. We disagreed, reasoning the ordinance permitted but did not require the zoning officer to reject an incomplete application, and "acceptance of a conditional use application does not constitute a determination that it complies with the technical requirements of the ordinance." *Id.* at 1237. We explained only the township board could act on

11

a conditional use application and, therefore, the zoning officer's failure to "identify any site plan deficiencies" was irrelevant. *Id.* Regarding Brookview's claim that the township failed to act in good faith, and that the Court should remand the case so that Brookview could amend its application, we observed, in part, that Brookview could have presented additional evidence regarding the site plan on appeal to the trial court but did not do so. *Id.* at 1238.

Here, like in *Brookview*, Applicant failed to comply with the specific site plan requirements of the Ordinance. As an initial matter, there is no question Applicant was required to submit the information listed in Section 190-201(C) of the Ordinance to receive conditional use approval, despite the exception in Section 190-201(A) that indicates a site plan review is unnecessary where "the physical layout of the principal building(s) and use will be approved under the [SALDO]." Although the Board and Common Pleas focused on Section 190-201(C), the Ordinance includes an additional provision relating to conditional uses in the Planned Industrial/Commercial District, which does not contain an exception and required Applicant to provide the same information as Section 190-201(C):

> For conditional uses in the [Planned Industrial/Commercial D]istrict, a development plan shall be submitted including the following information, in addition to information required in a site plan under [Sections] 190-201 and 190-208:
>
> A. A list of the types of uses expected to be located on the tract and their approximate floor areas.
>
> . . . .
>
> D. For any major industrial use(s), the likely hours of operation, the maximum number of employees expected on any one shift and a reasonable estimate of the expected amounts of different types of truck traffic.

. . . .

> F.  Such additional data or evidence that the Board . . . may reasonably require to ensure compliance with specific provisions of Township ordinances, especially to ensure public health and safety and to ensure compliance with the performance standards of Article XVI.

Section 190-121(A), (D), (F) (emphasis omitted).

Even if the exception in Section 190-201(A) of the Ordinance were available to Applicant, it would not apply under the circumstances of this case. It is undisputed the Facility would require approval under the SALDO. Section 190-201(C) clarifies, however, that the exception is not absolute:

> C.  Submission requirements for site plan review. The following information, as applicable, *shall be submitted by the applicant for any conditional use* or any use required to submit a site plan under Article XX or this section, *except for information waived by the [z]oning [o]fficer* as not applicable or necessary. If a conditional use review will also need approval of the physical layout under the [SALDO], *then the [z]oning [o]fficer may permit* an applicant to satisfy the conditional use plan requirement with a plan meeting the sketch plan requirements of the [SALDO], provided that such plan provides sufficient information to determine compliance with this . . . Ordinance.

Section 190-201(C) of the Ordinance (emphasis added).

Section 190-201(C) indicates the applicant must submit the listed information *unless the zoning officer chooses to waive that information.* Further, if a conditional use requires approval under the SALDO, the Ordinance does not entirely excuse an applicant from complying with the site plan requirement. The Ordinance directs that the zoning officer "*may permit*" an applicant to satisfy the site plan requirement with a sketch plan. Section 190-201(C) of the Ordinance (emphasis added). In this case,

13

Applicant does not argue, and review of the record does not indicate, that Applicant requested or received a waiver regarding the necessary information in Section 190-201(C), or that the zoning officer permitted Applicant to submit a sketch plan in lieu of a site plan. To the contrary, the addendum to Applicant's application indicates it submitted plans "contain[ing] all of the information needed for a site plan review as detailed in [Section] 190-201 of the . . . Ordinance." R.R. at 23a.

To the extent Applicant asserts it established compliance with the Ordinance, we disagree. Section 190-201(C)(1) of the Ordinance required Applicant to provide a statement describing the proposed use, which included "the type of services or type of manufacture." Moreover, Section 190-201(C)(8) required Applicant to describe "any proposed industrial or commercial operations or storage in sufficient detail to indicate potential nuisances and hazards" and provide "proposed methods to control such hazards and nuisances." At the hearings before the Board, Applicant's counsel and witnesses acknowledged there was no intended tenant or tenants for the Facility. *See, e.g.*, R.R. at 236a, 239a, 243a-44a, 249a, 314a. Because of this, Applicant could not describe the types of services or manufacturing that would occur at the Facility, let alone potential nuisances and hazards relating to the Facility's operations.

This Court employed similar reasoning in a recent unpublished memorandum opinion, which dealt with a conditional use application to build several warehouses to store "consumer products." *Mushroom Hill, LLC v. Swatara Twp. Bd. of Comm'rs* (Pa. Cmwlth., No. 178 C.D. 2021, filed Mar. 8, 2022), slip op. at 16.[5] In that case, the township board of commissioners determined the application and testimony "did not provide sufficiently detailed information as to the type of products to be stored and

---

[5] This Court may cite its unreported memorandum opinions filed after January 15, 2008, for their persuasive value. *See City of Phila. v. 1531 Napa, LLC*, 333 A.3d 39, 47 n.6 (Pa. Cmwlth. 2025).

distributed (including the possibility of toxic or hazardous materials)," among other things. *Id.*, slip op. at 5. We concluded the board did not err:

> The [b]oard has been tasked with protecting residents' safety, interests, and property from harmful impacts due to development, and even in the relatively limited context of conditional use proceedings, the [b]oard was within its discretion to conclude that [the applicant's] response to this factor, which was limited to its statements that the warehouses would be for "consumer products" or tenants in "consumer retail" was neither sufficiently thorough nor sufficiently detailed to meet the requirements of [the ordinance]. Even if . . . warehouses are commonly developed on a speculative basis as to the ultimate tenants and products, this does not absolve [the applicant] of the responsibility to comply with the [o]rdinance's requirements for approving a warehouse as a conditional use, including providing a "detailed description" of the types of materials to be stored and processed. And as noted, a mere stated intention to comply with all local requirements, as [the applicant] expressed throughout the proceedings before the [b]oard, is insufficient to show entitlement to a conditional use.

*Id.*, slip op. at 16-17 (citations omitted).

In addition, like in *Brookview*, the zoning officer's apparent decision to accept Applicant's conditional use application does not excuse its failure to comply with the specific site plan requirements of the Ordinance. Applicant points to language in the Ordinance providing that the zoning officer "*shall refuse* to accept an application if it does not contain sufficient information to determine compliance." Applicant's Br. at 31 n.5 (quoting Section 190-201(B)(1) of the Ordinance) (emphasis added). The Ordinance includes separate procedures, however, that govern review of conditional uses, and those procedures do not include the language on which Applicant relies. *See* Section 190-208(B) of the Ordinance. Assuming the zoning officer should have refused to accept the application, that does not change the fact "that acceptance of a conditional use application does not constitute a determination that it complies with the technical requirements of the ordinance." *Brookview*, 305 A.3d at 1237. It is the

15

Board and not the zoning officer that has the authority to grant or deny a conditional use application.[6]  *See* Section 190-208 of the Ordinance.

## CONCLUSION

Accordingly, Applicant is not entitled to relief, and we affirm Common Pleas' February 27, 2025 order.

_____
STACY WALLACE, Judge

---

[6] We do not agree with Applicant that the Township's general duty of good faith requires reversal of Common Pleas' order.  As this Court has explained:

> It is true that a municipality has a duty to process and review a land use application in good faith.  This includes providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.  When a municipality receives an incomplete application that precludes meaningful review, it should act clearly and without delay.  Further, after application acceptance, technical requirements and interpretations may be addressed collaboratively as ordinance compliance is assessed.

*Brookview*, 305 A.3d at 1237 (citations, quotation marks, and footnote omitted).  Here, Applicant does not suggest it was able to remedy the deficiencies in its site plan or would have done so given the opportunity.  Applicant insists, rather, that its site plan was not deficient.  Notably, our review does not indicate Applicant requested an opportunity to present additional evidence regarding its site plan to Common Pleas.  *See id.* at 1238.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Charles Chrin Real :
Estate Trust from the Decision of the :
Palmer Township Board of Supervisors :
                                            :
Appeal of: The Charles Chrin Real : No. 444 C.D. 2025
Estate Trust :

## **O R D E R**

**AND NOW**, this 22nd day of June 2026, the order of the Court of Common Pleas of Northampton County, dated February 27, 2025, is **AFFIRMED**.

_____
STACY WALLACE, Judge